## Belt Ry. Co. v. Frank T. Kinnare, Adm.

1. VERDICTS—*When Court May Set Aside.*—When the verdict is manifestly against the weight of evidence, it is not only within the power, but it is the duty of the court, to set it aside.

Action in Case, for personal injuries. Trial in the Circuit Court of Cook County; the Hon. GEORGE W. BROWN, Judge, presiding. Verdict and judgment for plaintiff; appeal by defendant. Heard in the Branch Appellate Court at the October term, 1898. Reversed. Opinion filed May 26, 1899.

EDGAR A. BANCROFT, attorney for appellant.

JAMES C. McSHANE, attorney for appellee.

MR. JUSTICE HORTON delivered the opinion of the court.

December 6, 1895, Joseph M. Murphy was instantly killed at Pullman Junction, in this county, by being run over by the tender attached to a locomotive engine belonging to appellant. There is practically no conflict in the testimony. This suit is brought by the administrator of the estate of said Murphy. In the trial court there was a verdict followed by a judgment in favor of appellee (plaintiff below). From that judgment the railroad company prosecutes this appeal. There is no complaint made as to the pleadings or the amount of the judgment.

At the time of his death deceased was in the employ of appellant. He had been in such employ about sixteen months. The first ten or twelve months he was a helper to another conductor. The remainder of the time, and at the time of his death, he was himself a conductor in charge of a switching and transfer crew. Early in the morning, December 6, 1895, he and his crew took their engine, No. 44, went to the South Chicago yard of appellant and got a train of loaded cars. They put their engine at the head and their caboose at the rear of this train and started west over the line of appellant. They reached Pullman Junction about 7:30 A. M., and stopped for orders.

At that place appellant has two main tracks, one called the north-bound track and the other the south-bound track, although at that point these tracks run nearly east and west. The telegraph office is south of the south-bound track. The train of which deceased was in charge, was on the north-bound track and his engine, No. 44, stopped nearly opposite the telegraph office. He went to that office, and upon there receiving his orders, crossed the south-bound track and went to his engine. When he crossed that track engine No. 33 had started from a switch which was about 300 feet west of deceased and was backing slowly east on the south-bound track.

The tracks of appellant are crossed by the track of the N. Y. C. & St. L. R. R. (the Nickel Plate) a short distance east of said telegraph office. Two of appellant's engines, Nos. 4 and 12, were standing on said south-bound track just east of the Nickel Plate crossing. No. 12 was furthest west, that is, nearest to No. 33.

As the engine of deceased's train started west, and as he left it, he turned and looked at No. 33 as it was going east. The distance it was from him at that moment is not stated.

The main tracks at that place were straight; it was a bright, clear morning, and there was nothing between deceased and No. 33 to obstruct the view. Deceased started and walked east between the north-bound and the south-bound tracks toward the caboose of his train. The engineer of engine No. 33 watched the deceased, who continued walking between the tracks, until that engine was within forty or fifty feet of him. That engine was nearing the Nickel Plate crossing, before reaching which it must stop, and the engineer therefore turned around to take hold of his brake handle to stop his engine. The deceased did not continue walking east between the east and the west-bound tracks, but the next seen of him he was standing between the rails of the east-bound track in front of the tender of the approaching engine No. 33. He was an intelligent and experienced railroad man, and must have known that the engineer of No. 33 could not see him as he stood between

the rails, because the tender of that engine intervened. He was thus standing with his back toward, and less than fifty feet from, the approaching engine, holding some paper in his hands which he was apparently reading. The engineer of No. '12 saw the danger and, with the whistle of his engine gave the signal to stop. But it was too late. The deceased was struck and run over by the tender and instantly killed. Engine No. 33 was moving very slowly at the time. It was nearing the Nickel Plate crossing, where it must stop.

The foregoing are undisputed facts. Whether the bell of No. 33 was ringing at the time the tender of that engine struck deceased, is uncertain. The engineer of 33 says the bell was ringing all the time. A switchman who was on No. 33, says that he pulled the bell cord twice, and that the bell had stopped ringing at the time of the accident.

Whether the bell was or was not ringing, we do not regard as a controlling question. The view most adverse to appellant may be assumed as to that. The important question is: Was the deceased in the exercise of ordinary care, or was he guilty of contributory negligence? To that question we have given careful consideration. If there was as to this question any serious conflict in the testimony, the verdict of the jury might be controlling. Where there is no conflict in the testimony, the court may consider the question as to whether the evidence is sufficient to sustain the verdict. In other words, when the verdict is manifestly against the weight of evidence, it is not only within the power, but it is the duty of the court to set the verdict aside.

We are of opinion that the verdict in this case can not be sustained. We have, therefore, stated the testimony very fully. It shows that without any apparent necessity for so doing, the deceased stepped between the rails of a railway track in front, and within a few feet of an approaching engine, and stood there with his back toward the engine. No reason whatever is shown for his so doing. He might have continued to walk between the west and the east bound

tracks, and have thus reached his caboose in perfect safety. No one had called to him or in any manner attracted his attention.  From the record and testimony in this case, we can not avoid the conclusion that deceased was not in the exercise of due care and caution, but was guilty of contributory negligence.  More than that: but for the negligence of deceased—negligence which was wholly inexcusable so far as the testimony shows—the accident could not have happened.

It does not appear that any different or stronger case for appellee could be made upon a retrial.  It would seem that all persons who saw the accident were called as witnesses, except the switchman who called the attention of the engineer of No. 12 to the dangerous position of deceased. There is no criticism as to the testimony of any witness, or as to any apparent interest or prejudice of any witness.  We can not see any good reason why this case should not be reversed without remanding.

The judgment of the Circuit Court is reversed.